# EXHIBIT B

# (FAC – clean version)

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**KIRAKOSIAN LAW, APC**
Gregory L. Kirakosian (SBN 294580)
greg@kirakosianlaw.com
11684 Ventura Boulevard, Suite 975
Studio City, CA 91604
Phone: (213) 986-5389
Fax: (213) 477-2355

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BRIDGITTA COVELLI,

Plaintiff,

v.

CITY OF LOS ANGELES; STEVEN RALPH; and DOES 2 through 10, inclusive,

Defendants.

Case No. 2:26-cv-03913-ODW-RAO

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)
3. First Amendment, Retaliation (42 U.S.C. § 1983)
4. Municipal Liability, Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983)
5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)
6. Municipal Liability, Ratification (42 U.S.C. § 1983)
7. Battery
8. Negligence
9. Violation of Bane Act (Civil Code § 52.1)

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This civil rights and state tort action arises from the unjustified use of force by Defendants, police officers for the City of Los Angeles, against Plaintiff Bridgitta Covelli. On June 14, 2025, one or more Los Angeles police officers fired a "less-lethal" impact round from a launcher at Plaintiff, for no legitimate reason, while she was on her way home.

2. Through this action, Plaintiff seeks compensatory and punitive damages from Defendants for their violations of Plaintiff's rights, and seeks to hold Defendants accountable for same.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and because, on information and belief, all Defendants reside in this district.

## PARTIES

5. Plaintiff BRIDGITTA COVELLI (or "Bridgette" Covelli) is an individual residing in Los Angeles, California, in the County of Los Angeles. BRIDGITTA COVELLI seeks all available damages under federal and state law, including compensatory damages.

6. Defendant CITY OF LOS ANGELES ("CITY") is a political subdivision of the State of California that is within this judicial district. Defendant CITY is responsible for the actions, omissions, policies, procedures, practices, and

customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring those actions, omissions, policies, procedures, practices, and customs of the Defendant CITY, LAPD, and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, Defendant CITY was the employer of the individual defendants.

7. Defendant STEVEN RALPH ("RALPH") is a police officer for the CITY working for the LAPD at the time of this incident. RALPH was acting under color of law within the course and scope of his employment with the CITY and LAPD at all relevant times. RALPH was acting with the complete authority and ratification of his principal, Defendant CITY.

8. Defendant Officer DOES 2-10 are police officers for the CITY, by and through its LAPD ("DOE OFFICERS"). At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their employment as officers for Defendant CITY and its LAPD, and were acting with complete authority and ratification of their principal, Defendant CITY. On information and belief, DOE OFFICERS were residents of the County of Los Angeles at all relevant times. DOE OFFICERS are sued in their individual capacities.

9. In doing the acts, failings, and/or omissions as hereinafter described, Defendants RALPH and DOE OFFICERS were acting on the implied and actual permission and consent of Defendant CITY.

10. The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOE OFFICERS, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named

Defendants is responsible in some manner for the conduct or liabilities alleged herein.

11. At all times mentioned herein, each and every Defendant, including DOE OFFICERS, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

12. All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. On June 14, 2025, at approximately 7:00 p.m., Plaintiff left a peaceful public protest in the downtown area of Los Angeles, California.

14. Plaintiff was riding on a "one-wheel" and had already travelled multiple blocks away from the protest area, along Broadway, before reaching the intersection of Broadway and West 3rd Street.

15. At this time, a line of LAPD officers stood along the western crosswalk along Broadway, blocking access to the western portion of West 3rd Street. The officers were not blocking traffic along Broadway.

16. As Plaintiff passed through the intersection of Broadway and West 3rd, travelling along the eastern portion of Broadway, opposite the line of officers, Defendants RALPH and DOE OFFICERS (collectively "Defendant Officers") began firing less-lethal projectile rounds, believed to be 40mm rounds, at Plaintiff, striking Plaintiff in the arm and causing serious injury.

17. At the time Defendant Officers fired, Plaintiff was unarmed, was not approaching officers, posed no threat of harm whatsoever to Defendant Officers or

anyone else, and had not been given any dispersal order, warning, or audible command prior to the deployment of force.

18. Despite witnessing Defendant Officers' patently unjustified use of force against a nonthreatening civilian, no other officer intervened.

19. No officer provided or secured, or made any attempt to provide or secure, medical attention to Plaintiff. Instead, Defendant Officers continued deploying projectiles.

20. As Defendant Officers continued deploying projectiles, Plaintiff was assisted away from the area by others and transported to a hospital for medical treatment.

21. As a result of Defendants' conduct, Plaintiff suffered significant physical pain and suffering, embarrassment, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

22. On or around October 16, 2025, Plaintiff filed comprehensive and timely claims for damages with the City of Los Angeles pursuant to the applicable sections of the California Government Code. As of the date of the filing of this Complaint, Plaintiff has received no response to her claim.

## FIRST CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

**Plaintiff against Defendants RALPH and DOES 2-10**

23. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

24. At the time Defendant Officers used force against Plaintiff, Plaintiff had not committed any crime, did not pose any threat of harm to Defendant Officers or others, and was unarmed.

25. Defendant Officers provided no verbal warning to Plaintiff that they would use force against her prior to firing less-lethal weapons at her.

26. The unreasonable use of force by Defendant Officers deprived Plaintiff of her right to be secure in her person against unreasonable searches and seizures as guaranteed to her under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

27. As a result, Plaintiff suffered extreme pain and suffering and injury.

28. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries because they were integral participants in the use of excessive force.

29. As a result of the violation of Plaintiff's Fourth Amendment rights, Defendant Officers are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

30. The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to these defendants.

31. Plaintiff also seeks attorney's fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

**Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)**

**Plaintiff against Defendants RALPH and DOES 2-10**

32. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

33. After shooting Plaintiff with less-lethal projectiles, injuring her, none of Defendant Officers provided, attempted to provide, or took any steps to secure the provision of needed medical care for Plaintiff.

34. The denial of medical care by Defendants deprived Plaintiff of her right to be secure in her persons against unreasonable searches and seizures as guaranteed to her under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35. As a result, Plaintiff suffered significant mental and physical pain, and injury, exacerbated as a result of the failure to provide medical care.

36. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff therefore warrants the imposition of exemplary and punitive damages as to these defendants.

37. As a result of the violation of Plaintiff's Fourth Amendment rights, Defendant Officers are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

38. Plaintiff also seeks attorney's fees and costs under this claim.

## **<u>THIRD CLAIM FOR RELIEF</u>**

### **First Amendment—Retaliation (42 U.S.C. § 1983)**

### **Plaintiff against Defendants RALPH and DOES 2-10**

39. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

40. Peaceably assembling for public protest is protected conduct under the First Amendment to the United States Constitution.

41. Defendant Officers fired one or more less-lethal projectile rounds at Plaintiff because of, and in retaliation for, their belief that she was participating, or had previously participated, in First Amendment–protected protest against law enforcement or other government policies or practices, as extrajudicial punishment for such assumed protest.

42. The retaliatory uses of force against Plaintiff, in particular shooting her with less lethal projectile rounds, would chill a person of ordinary firmness from continuing to exercise her free speech and/or free assembly rights.

43. Plaintiff's First Amendment–protected activity was a substantial or motivating factor in Defendant Officers' conduct.

44. As a result of Defendant Officers' retaliatory use of force against Plaintiff, Plaintiff suffered extreme pain and suffering and injury.

45. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries because they were integral participants in the use of excessive force.

46. As a result of the violation of Plaintiff's First Amendment rights, Defendant Officers are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

47. The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights of Plaintiff therefore warrants the imposition of exemplary and punitive damages as to these defendants.

48. Plaintiff also seeks attorney's fees and costs under this claim.

/ / /

**<u>FOURTH CLAIM FOR RELIEF</u>**

**Municipal Liability—Unconstitutional Custom, Policy, or Practice**

**(42 U.S.C. § 1983)**

**Plaintiff against Defendant CITY**

49. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

50. The actions of Defendant Officers, which deprived Plaintiff of her constitutional rights under the First and Fourth Amendments as alleged herein, were carried out in accordance with a widespread and longstanding practice or custom of Defendant CITY and its LAPD. This custom condones, ratifies, and acquiesces in the excessive use of excessive force by LAPD officers, particularly through wanton and indiscriminate use of less-lethal projectile weapons against individuals peaceably and lawfully exercising their First Amendment rights, or otherwise present, at or near public protests. Additionally, as a result of this ingrained practice, on information and belief, Defendant Officers have not been disciplined, reprimanded, retrained, suspended, or faced any administrative or adverse employment consequences in connection with Plaintiff's injuries. This unlawful practice or custom by Defendant CITY was the moving force behind the deprivations of Plaintiff's constitutional rights alleged herein.

51. Defendant CITY, including through its final policymakers and supervisors, maintained the following unconstitutional customs, practices, and/or unwritten policies:

a. The excessive and wanton use of less-lethal projectile weapons by LAPD officers against individuals perceived to be involved in or associated with public protest and/or assembly, regardless of whether or not such individuals reasonably appear to pose any threat of harm

to officers or any other person, and regardless of whether or not such individuals violate any law or order.

b. The use of excessive force by LAPD officers when there is no need to use force, including when there is no apparent immediate threat of harm to officers or the public.

c. The CITY's failure to provide adequate training to LAPD officers regarding the use of force, including training on fundamental constitutional limits on use of force, including regarding the use of less-lethal projectile weapons in the context of public protests and/or assemblies.

d. The CITY's employing and retaining as police officers and individuals whom the CITY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

e. The CITY's inadequately supervising, training, controlling, assigning, and disciplining police officers, contributing to situations like that encountered during the subject incident, where lack of proper direction and control led to the escalation of a situation involving an individual who was simply traveling home following an earlier public protest.

f. The CITY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY police officers, as demonstrated by the subject incident, where used force against an individual who posed no threat to the officers and had committed no crime.

g. The CITY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of less-lethal force instances such as that used in the subject incident.

h. Even when an incident such as the subject incident is brought to light, where the use of force was patently excessive and unreasonable, the CITY has refused to discipline, terminate, or retrain the deputies involved.

i. The CITY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes, as indicated by the lack of immediate corrective actions or reporting regarding the subject incident, and by the other present officers' failure to intervene.

j. The CITY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of excessive force by police officers, as evidenced by the subject incident, where a lack of discipline, retraining, investigation, termination, and recommendation for criminal prosecution perpetuates a cycle of violence in violation of individuals' constitutional rights.

52. Defendant CITY, by and through its final policymakers and officials, along with Defendant Officers, had actual or constructive knowledge of the unconstitutional policies, practices and customs alleged herein. Defendant CITY acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

53. Examples of excessive, wanton, and indiscriminate use of less-lethal projectile weapons by LAPD officers against individuals exercising their First Amendment speech and/or assembly rights, regardless of any threat of harm posed by such individuals, abound in recent years. The following are only a few examples of such constitutional violations committed by LAPD officers working for Defendant CITY, demonstrating the existence of the practices, customs, and/or

unwritten policies alleged herein, and CITY's deliberate indifference to same and to the resulting widespread violations of individuals' constitutional rights.

a. In *Black Lives Matter Los Angeles v. City of Los Angeles*, et al., No. CV 20-5027 CBM (ASx) (C.D. Cal.), LAPD officers used projectiles and baton strikes to disperse or control protestors in the wake of the death of George Floyd. The district court there ordered a preliminary injunction that: only LAPD officers who successfully completed training and meet all annual qualification requirements may use the 40mm and 37mm projectile launchers in public demonstrations; an officer may only use 40mm less-lethal munitions when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence or physical harm, and a warning is given if feasible; an officer may use 37mm less-lethal munitions as a crowd control tool with the prior approval of the incident commander and only when a dispersal order has been issued, unless immediate action is necessary to stop violence, to ensure public safety and restore order; the 40mm launcher must not be used to target the head, neck, face, eyes, kidneys, chest, groin or spin of a person; and the 40mm and 37mm launchers should only be fired at a distance of 5 feet or greater from another person, unless an officer or other person is attacked and there is a threat of imminent or serious harm. 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022), *vacated in part on other grounds*, 113 F.4th 1249 (9th Cir. 2024).

(a) In January 2026, following LAPD's continued wanton use of less-lethal projectile weapons during protests in the summer of 2025—the same period of time as the subject incident in this case—the court held Defendant CITY and its LAPD in civil contempt of its earlier injunction as a

result of CITY's failure to take measures to ensure compliance with the injunction and to prevent the wanton use of less-lethal projectiles prohibited by the injunction. *Black Lives Matter Los Angeles v. City of Los Angeles*, 2026 WL 414801, at *2-3 (C.D. Cal. Jan. 15, 2026).

(b) In its January 2026 order, the district court cited the following specific examples of LAPD's wanton or retaliatory use of less-lethal force against protestors in the summer of 2025 identified by the class plaintiffs:

"• LAPD Officer Orozco (identified in a New York Times video report) shot Atlachinolli Tezcacoatl twice while he had his hands up and was filming police with his phone. Officer Orozco then shot Mr. Tezcacoatl in the face, requiring surgery to repair his jaw.

"• LAPD Officer shot Kelsey McMurtry while crouched behind a folding chair by a 40mm less-lethal weapon. She was then struck by another officer with a 40mm LLM while on the ground, and then shot a third time in in the back. Plaintiffs allege mounted officers then trampled her as they advanced against the protestors.

"• LAPD officers shot Kathryn Luksus in the head while she was sitting down and holding a sign.

"• LAPD officers shot Jason Reedy in the groin with a 40mm KIP while he was on the sidewalk with his hand sup in the air.

"• In response to the shooting of Mr. Reedy, Shakeer Rahman, counsel of record, asked the officer for his name and serial number pursuant to Cal. Penal Code § 830.10. Id.

> The officer then shot Mr. Rahman twice in the groin for "taking [the officer's] focus."
>
> "• LAPD shot Chad Ashby in the back of the head with a KIP while Mr. Ashby was trying to leave the protest.
>
> "• While treating bloody wounds of protestors, LAPD officers shot registered nurse Christopher Fernandez with a 40mm LLM, while he was wearing a white cross on his clothing to indicant medical treatment.
>
> "• Without warning of intention to shoot with a less lethal weapon, LAPD shot Jack Kearns in the back of his head with a 40mm."
>
> *Id.* at *2 (internal citations omitted).

b. On May 29, 2020, Asim Jamal Shakir Jr. was shot twice with a less-lethal projectile launcher while protesting in the wake of the death of George Floyd. Shakir suffered wounds to his right hand and burns requiring medical treatment, as well as a wound and bruising on his buttocks. On August 25, 2023, a jury awarded Shakir $3,750,000 in damages. (*Shakir v. City of Los Angeles, et al.*, No. 21STCV17510.)

c. On May 30, 2020, an LAPD officer shot a less-lethal projectile into a crowd of protestors and hit Deon Jones in the face, fracturing his jaw. In March 2023, a jury found the officer liable for Jones's injuries and awarded Jones $375,000. (*Jones v. City of Los Angeles, et al.*, No. 2:20-cv-11147-FWS-SK.)

d. On June 2, 2020, an LAPD officer shot a man in the groin with a less-lethal projectile round during a George Floyd demonstration, rupturing the man's testicle. In May 2024, the CITY settled the man's case for $1,500,000. (*Montemayor v. City of Los Angeles et al,*, No. 2:21-cv-03124-CBM-(ASx).)

e. On May 30, 2020, an LAPD officer shot Marine-veteran and protester C.J. Montano multiple times with less lethal rounds, including shooting at Montano's head. Montano had his hands up before being shot. Montano suffered brain bleeding and had to spend time in the ICU. In 2020, the CITY settled the lawsuit for $1,250,000. (*Montano v. City of Los Angeles, et al.*, No. CV 20-07241-CBM (ASx)).

f. On June 6, 2025, media from around the world arrived in Los Angeles to cover the protests against the federal government's immigration raids. Throughout the protests, members of the media were prevented from entering protest areas where they were lawfully permitted, and were detained, arrested, and met with an onslaught of less-lethal munitions and other shows of physical force, in flagrant violation of their First Amendment rights. On June 16, 2025, a journalist support organization with roughly 1,000 members filed a lawsuit against the CITY for these and other violations that occurred during these protests. On July 10, 2025, the court ordered a temporary restraining order to, among other things, enjoin the CITY and its LAPD from using less-lethal munitions and other crowd control weapons (including kinetic impact projectiles, chemical irritants, and flash-bangs) against journalists who are not posing a threat of imminent harm to an officer or another person, enjoin the CITY and its LAPD from aiming kinetic energy projectiles at the head, neck, back, or any other vital organs, and enjoin the CITY and its LAPD from using kinetic energy projectiles or chemical against in response to a curfew violation, a verbal threat, or noncompliance with a law enforcement directive. *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 790 F.Supp.3d 838 (C.D. Cal. July 10, 2025).

(a) Two months later, the court issued a similar preliminary injunction. *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 799 F.Supp.3d 1007 (C.D. Cal. Sept. 10, 2025). In granting the preliminary injunction—referencing the CITY and LAPD's long-standing pattern and practice of wantonly using less-lethal weapons in the contexts of protests and other exercises of individuals' First Amendment rights dating back to at least 2007—the district court remarked, "It is déjà vu all over again." *Id.* at 1015.

g. In 2007, "the LAPD 'deployed a total of 146 less-lethal impact munitions and over 100 uses of the baton' against media and protestors, peaceful or not, at a May Day rally in MacArthur Park." *Id.* (quoting *Multi-Ethnic Immigr. Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 624 (C.D. Cal. 2007)). "In the aftermath, the LAPD acknowledged that the treatment of the media at the rally failed to comply with previous settlements." *Id.*

54. The foregoing nonexhaustive list of examples establish a pattern of excessive use of force by Defendant CITY's LAPD officers—specifically, the wanton and unjustified use of less-lethal projectile rounds against individuals exercising their First Amendment rights who pose no immediate threat of harm to anyone—and the CITY's custom and practice of ratifying the excessive use of force by LAPD officers, as evidenced by the number of prior cases involving the use of unreasonable force by officers working for the LAPD and the CITY's retention of those officers.

55. Defendant CITY's longstanding practice or custom caused the deprivation of Plaintiff's rights by Defendant Officers; that is, Defendant CITY's custom, practice, or unwritten policy condoning excessive use of less-lethal

weapons is so closely related to the deprivation of Plaintiff's rights in this case as to be the moving force that caused Plaintiff's injury.

56. Defendant CITY had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged herein.

57. Defendant CITY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

58. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

59. As a result of the violation of Plaintiff's rights, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

60. Plaintiff also seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability—Failure to Train (42 U.S.C. § 1983)

### Plaintiff against Defendant CITY

61. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62. The training policies of Defendant CITY were not adequate to properly train LAPD officers to handle the usual and recurring situations in their interactions with residents, including interactions related to LAPD's response to peaceful protests and large assemblies. The training policies of Defendant CITY were not adequate to properly train LAPD officers with regard to the use of force,

the permissible use of less-lethal weapons, and protecting individuals' First Amendment rights.

63. The unjustified and excessive use of force against Plaintiff by Defendant Officers was a result of the inadequate training by Defendant CITY, which failed to train LAPD officers, such as Defendant Officers, as to proper police tactics, proper use of force, proper use of less-lethal weapons, and proper police tactics in the use of force. Defendant CITY was responsible for the training of LAPD deputies to ensure that the actions, procedures, and practices of Defendant Officers, complied with Peace Officer Standards and Training ("POST") training standards regarding these subjects, and complied with applicable injunctions and other court orders.

64. Defendant CITY failed to train CITY police officers, such as Defendant Officers, to comply with POST training standards regarding proper police tactics, proper use of force, and proper police tactics when dealing with individuals participating in or perceived to have a connection to protests. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of Defendant CITY were not adequate to train its police officers to handle the usual and recurring situations with individuals with whom its officers, including Defendant Officers, have contact.

65. The training policies of Defendant CITY were deficient in the following ways:

a. Defendant CITY failed to adequately train LAPD officers, such as Defendant Officers, in responding to protests and interacting with individuals who are participating, or may have some connection to, protests.

b. Defendant CITY failed to adequately train LAPD officers, such as Defendant Officers, regarding fundamental legal requirements

governing officers' use of less-lethal weapons, including projectile rounds, against individuals exercising their First Amendment rights and others, including by failing to train officers that they may not fire direct impact weapons at individuals who pose no apparent threat merely because officers desire that the individuals leave or disperse, whether or not a proper dispersal order has been issued.

c. Defendant CITY failed to properly train LAPD officers, such as Defendant Officers, to manage their fear to prevent it from becoming unreasonable and not objectively justifiable, including in the context of protests or other First Amendment–protected public activity.

d. Defendant CITY failed to properly train LAPD officers, such as Defendant Officers, on the importance of effective communication between officers prior to using any type of force, and on the necessity of issuing verbal warnings that force will be used against individuals prior to using such force against them when such warnings are feasible.

66. The failure of Defendant CITY to provide proper training to its police officers resulted in the deprivation of Plaintiff's rights by Defendant Officers as alleged herein. Defendant CITY's failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injuries to Plaintiff.

67. The training policies of the City were not adequate to train its police officers to handle the usual and recurring situations they must deal with, including situations involving or relating to peaceful protests and individuals who attend them. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to properly train its police officers.

68. Defendant CITY had either actual or constructive knowledge of the failures to train alleged herein.

69. Defendant CITY also acted with deliberate indifference to the foreseeable effects and consequences of its failures to train with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

70. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

71. As a result of the violation of Plaintiff's rights, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

72. Plaintiff also seeks attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability—Ratification (42 U.S.C. § 1983)

### Plaintiff against Defendant CITY

73. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

74. The acts of Defendant Officers deprived Plaintiff of her particular rights under the United States Constitution, including when Defendant Officers used excessive force against Plaintiff by intentionally shooting her with less-lethal projectile rounds.

75. On information and belief, one or more officials for Defendant CITY with final policymaking authority concerning the acts of Defendant Officers, and the bases for them, ratified the acts and omissions of Defendant Officers and the bases for them, specifically approving the use of excessive and unreasonable force against Plaintiff when she was not an immediate threat to any person and had not committed any crime.

76. Defendant CITY's improper ratification of the unconstitutional use of force against Plaintiff amounts to deliberate indifference the violation of Plaintiff's constitutional rights as alleged herein, and to the foreseeable future violations of similarly situated individuals that will result from CITY's endorsement of the unconstitutional use of force against Plaintiff during the subject incident.

77. Defendant CITY's ratification of the unconstitutional use of force against Plaintiff, by and through its officials possessing relevant final policymaking authority, amounts to adoption of Defendant Officers' unconstitutional conduct by Defendant CITY itself, such that Defendant CITY can be fairly said to have itself caused the constitutional violations alleged.

78. By reason of the aforementioned acts and omissions, Plaintiff has suffered significant physical and emotional pain and suffering.

79. As a result of the violation of Plaintiff's rights, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

80. Plaintiff also seeks attorney's fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Battery

### Plaintiff against all Defendants

81. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

82. Defendant Officers, while working as officers for Defendant CITY and its LAPD and acting within the course and scope of their duties, intentionally shot Plaintiff with less-lethal projectile weapons, injuring her.

83. Defendant Officers had no privilege or legal justification for using such force against Plaintiff, making the use of force unreasonable under the circumstances. At all relevant times, Plaintiff did not pose a threat to anyone, including Defendant Officers, and was not committing a crime.

84. No warning was given that force would be used prior to its use, even though a warning was feasible, given that Plaintiff was not approaching Defendant Officers or others when Defendant Officers fired, Plaintiff was not committing a crime, and Plaintiff did not otherwise reasonably appear to pose an immediate threat of harm to anyone.

85. By reason of the aforementioned acts and omissions of Defendant Officers, Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, and humiliation.

86. Defendant CITY is vicariously liable for the wrongful acts of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

87. The conduct of Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling her to an award of exemplary and punitive damages.

88. As a result of their violation of Plaintiffs' rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

**<u>EIGHTH CLAIM FOR RELIEF</u>**

**Negligence**

**Plaintiff against all Defendants**

89. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

90. Police officers, including Defendant Officers, have a duty to use reasonable care to prevent harm and injury to others, including members of the public such as Plaintiff. This duty includes using giving appropriate commands, allowing reasonable time to comply with such commands where feasible, using reasonable de-escalation techniques prior to using force, refraining from using unreasonable or excessive force, and making reasonable efforts to provide or secure the provision of timely medical care to individuals they have harmed.

91. Defendant Officers negligently injured Plaintiff when they fired less-lethal projectile weapons at her, causing her injuries. Their use of force was excessive, unreasonable, and negligent, including by virtue of their failure to first warn Plaintiff that force would be used, despite such warning being feasible, and by virtue of their pre-shooting conduct and post-shooting failure to provide or summon medical care.

92. Through these acts and omissions, Defendant Officers breached their duty of care to Plaintiff.

93. By reason of the aforementioned acts and omissions of Defendant Officers, Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, and humiliation.

94. Defendant CITY is vicariously liable for the wrongful acts of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its

employees within the scope of the employment if the employee's act would subject him or her to liability.

95. As a result of their violation of Plaintiffs' rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

**NINTH CLAIM FOR RELIEF**

**Violation of Cal. Civil Code § 52.1**

**Plaintiff against all Defendants**

96. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

97. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of her constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force.

98. The Bane Act, the California Constitution, and California common law prohibit the use of excessive force, interference with free speech and assembly rights, and denial of medical care by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action for such claims.

99. Defendant Officers violated Plaintiff's constitutional rights by using unreasonable and excessive force against her, by forcibly retaliating against her for her perceived association with a public protest, and by denying her medical care after firing less-lethal impact rounds at her. All of these were done intentionally and with the specific intent to violate Plaintiff's constitutional rights, as

demonstrated by Defendants' clear reckless indifference to such rights, and in retaliation for Plaintiff's exercise of her First Amendment rights.

100. On information and belief, Defendant Officers intentionally and spitefully committed the above acts to discourage Plaintiff from exercising her civil rights.

101. Plaintiff reasonably believed that the violent acts committed by Defendant Officers were intended to discourage her from exercising her civil rights.

102. Defendant Officers successfully interfered with the civil rights of Plaintiff, including by depriving her of her right to be free from excessive force, and by chilling her future exercise of her First Amendment rights.

103. The conduct of Defendant Officers was a substantial factor in causing the harm, losses, injuries, and damages of Plaintiff.

104. By reason of the aforementioned acts and omissions of Defendant Officers, Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, and humiliation.

105. Defendant CITY is vicariously liable for the wrongful acts of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

106. As a result of their violation of Plaintiffs' rights, Defendants are liable to Plaintiff for compensatory damages under California law, including for past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, medical expenses, loss of earnings, and past and future economic and non-economic losses.

107. Plaintiff also seeks attorneys' fees and costs under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRIDGITTA COVELLI requests entry of judgment in her favor against Defendants CITY OF LOS ANGELES, STEVEN RALPH, and DOES 2-10 as follows:

A. For compensatory damages under federal and state law, in an amount according to proof at trial;

B. For other general damages in an amount according to proof at trial;

C. For other non-economic damages in an amount according to proof at trial;

D. For other special damages in an amount according to proof at trial;

E. For punitive damages against the individual defendants in an amount to be proven at trial;

F. For statutory damages;

G. For reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h);

H. For costs of suit; and

I. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: September 25, 2026

**LAW OFFICES OF DALE K. GALIPO**
**KIRAKOSIAN LAW, APC**

______________________________

Dale K. Galipo
Benjamin S. Levine
Gregory L. Kirakosian
*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

The Plaintiff named herein hereby demands a trial by jury.

DATED: September 25, 2026

**LAW OFFICES OF DALE K. GALIPO**
**KIRAKOSIAN LAW, APC**

Dale K. Galipo
Benjamin S. Levine
Gregory L. Kirakosian
*Attorneys for Plaintiff*